B25B (Official Form 25B) (12/08)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO.:  15-51527 |
| | : | |
| BOBST COLLISION, INC. | : | CHAPTER:  11 |
| | : | |
| Debtor. | : | JUDGE:  HOFFMAN |

Small Business Case under Chapter 11

## BOBST COLLISION, INC.'S DISCLOSURE STATEMENT
## DATED DECEMBER 7, 2016

### TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Introduction | Page 3 |
| | A. Purpose of This Document | Page 3 |
| | B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing | Page 4 |
| | C. Disclaimer | Page 5 |
| II. | Background | Page 5 |
| | A. Description and History of the Debtor's Business | Page 5 |
| | B. Insiders of the Debtor | Page 5 |
| | C. Management of the Debtor Before and During the Bankruptcy | Page 5 |
| | D. Events Leading to Chapter 11 Filing | Page 6 |
| | E. Significant Events During the Bankruptcy Case | Page 6 |
| | F. Projected Recovery of Avoidable Transfers | Page 7 |
| | G. Claims Objections | Page 7 |
| | H. Current and Historical Financial Conditions | Page 7 |
| III. | A. What is the Purpose of the Plan of Reorganization | Page 8 |
| | B. Unclassified Claims | Page 8 |
| | 1.    Administrative Expenses | Page 8 |
| | 2.    Priority Tax Claims | Page 10 |

1

B25B (Official Form 25B) (12/08) – Cont.

|  |  |  |  |  |
|---|---|---|---|---|
| | C. | Classes of Claims and Equity Interests | | Page 12 |
| | | 1. | Classes of Secured Claims | Page 12 |
| | | 2. | Classes of Priority Unsecured Claims | Page 13 |
| | | 3. | Class of General Unsecured Claims | Page 13 |
| | | 4. | Class of Equity Interest Holders | Page 14 |
| | D. | Means of Implementing the Plan | | Page 15 |
| | | 1. | Source of Payments | Page 15 |
| | | 2. | Post-confirmation Management | Page 15 |
| | E. | Risk Factors | | Page 15 |
| | F. | Executory Contracts and Unexpired Leases | | Page 16 |
| | G. | Tax Consequences of Plan | | Page 16 |
| IV. | | Confirmation Requirements and Procedures | | Page 17 |
| | A. | Who May Vote or Object | | Page 17 |
| | | 1. | What is an Allowed Claim or an Allowed Equity Interest ? | Page 18 |
| | | 2. | What is an Impaired Claim or an Allowed Equity Interest ? | Page 18 |
| | | 3. | Who is **Not** Entitled to Vote ? | Page 18 |
| | | 4. | Who can vote in More Than One Class | Page 19 |
| | B. | Votes Necessary to Confirm the Plan | | Page 19 |
| | | 1. | Votes Necessary for a Class to Accept the Plan | Page 19 |
| | | 2. | Treatment of Non-accepting Classes | Page 20 |
| | C. | Liquidation Analysis | | Page 20 |
| | D. | Feasibility | | Page 20 |
| | | 1. | Ability to Initially Fund Plan | Page 21 |
| | | 2. | Ability to Make Future Plan Payments and Operate Without Further Reorganization | Page21 |
| V. | A. | Discharge of Debtor | | Page 21 |
| | B. | Modification of Plan | | Page 22 |
| | C. | Final Decree | | Page 22 |
| VI. | | Representations | | Page 22 |
| VII. | | Conclusion | | Page 24 |

B25B (Official Form 25B) (12/08) – Cont.

## I.    INTRODUCTION

This is the disclosure statement   (the "Disclosure Statement")   in the small business chapter 11 case of **Bobst Collision, Inc.** (the "Debtor").   This Disclosure Statement contains information about the Debtor and describes the Bobst Chapter 11 Plan (the "Plan") filed by the Debtor on December 3, 2015.   A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.   If you do not have an attorney, you may wish to consult one.**

The proposed distributions under the Plan are discussed at pages 8 - 14 of this Disclosure Statement.   General unsecured creditors, if any, are classified in Class 3, and will receive a distribution of 5% of their allowed claims.

### A. Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the Plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why Bobst Collision, Inc. believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.   This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

3

B25B (Official Form 25B) (12/08) – Cont.

## B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.   This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.   Time and Place of the Hearing to Confirm the Plan.

The hearing at which the Court will determine whether to confirm the Plan will take place   on   _____   at   _____,   in Courtroom _____, at the United States Bankruptcy Courthouse, 170 N. High Street, Columbus, OH 43215.

### 2.   Deadline for Voting to Accept or Reject the Plan.

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Garry A. Sabol, Attorney for Debtor, 1530 Demorest Road, Columbus, OH 43228.   See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

### 3.   Deadline for Objecting to the Confirmation of the Plan.

Objections to the confirmation of the Plan must be filed with the Court and served upon _____ by _____.

### 4.   Identity of Persons to Contact for More Information.

If you want additional information about the Plan, you should contact *Garry A. Sabol, Attorney for Debtor, 1530 Demorest Road, Columbus, OH 43228.*

B25B (Official Form 25B) (12/08) – Cont.

## C. Disclaimer

*The Court has conditionally approve this Disclosure Statement as containing adequate Information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until _____.*

## II.    BACKGROUND

### A. Description and History of the Debtor's Business

The Debtor is a corporation founded as a sole proprietorship in 1996 and incorporated on or about 2001. The Debtor is in the business of automotive repair and accepts work directly from the public as well as through insurance companies, such as State Farm, as a participant in their direct repair operation.

### B. Insiders of the Debtor

There are no insiders of the Debtor as defined in §101 (31) of the United States Bankruptcy Code.

### C. Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the Bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were:

> **David Bobst – President, Shareholder and Operations Manager**
> **Sandra Bobst – Secretary and Shareholder**

5

B25B (Official Form 25B) (12/08) – Cont.

The Managers of the Debtor during the Debtor's chapter 11 case have been:

**David Bobst – President, Shareholder and Operations Manager**

**Sandra Bobst – Secretary and Shareholder**

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be:

**David Bobst – President, Shareholder and Operations Manager**

**Sandra Bobst – Secretary and Shareholder**

### D. Events Leading to Chapter 11 Filing

A foreclosure action by Bayview Loan Servicing, LLC, as well as Internal Revenue Service bank garnishments prompted the filing of the Debtor's bankruptcy proceedings. Additionally, street construction significantly reduced the flow of walk-in business.

### E. Significant Events During the Bankruptcy Case

• No asset sales outside the ordinary course of business, debtor in possession financing, or cash collateral orders.

• Garry A. Sabol appointed as attorney for Debtor and pending applicant, Roy Lucas, for Accountant.

• No adversary proceedings have been filed or other significant litigation has occurred. The only legal or administrative proceedings that are pending, or have been pending during the case in a forum other that the Court is the aforementioned foreclosure action filed by Bayview Loan Servicing, LLC.

• The Debtor has taken the following steps to improve operations and profitability: The Debtor has been accepted by State Farm Insurance Company in

6

B25B (Official Form 25B) (12/08) – Cont.

their Direct Repair program as of January 1, 2015 and has made steady progress in
moving up in their points system resulting in a steady increase in vehicles to be
repaired and corresponding income derived from the additional work.   Debtor has
maintained and improved its staff of qualified mechanics and body men.

## F.  Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other
avoidable actions.

## G.  Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable
order, the Debtor reserves the right to object to claims.   Therefore, even if your claim is allowed
for voting purposes, you may not be entitled to a distribution if an objection to our claim is later
upheld.   The procedures for resolving disputed claims are set forth in Article V of the Plan.

## H.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B.

The Debtor's most recent financial statements issued before bankruptcy are set forth in
Exhibit C.

The most recent post-petition operating report filed since the commencement of the
Debtor's bankruptcy case is set forth in Exhibit D.   A summary of the Debtor's periodic operating
reports filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit D.

7

B25B (Official Form 25B) (12/08) – Cont.

### III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A.   What is the Purpose of the Plan of Reorganization ?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.   The Plan also states whether each class of claims or equity interests is impaired or unimpaired.   If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B.   Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.   They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.   As such, the Plan Proponent *has not* placed the following claims in any class:

##### 1.   Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.   Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.   The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

B25B (Official Form 25B) (12/08) – Cont.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business after the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of the obligation, if later |
| The Value of Goods Received in the Ordinary Course of Business within 20 days before the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of the obligation, if later |
| Professional Fees, as approved by the Court | Anticipated fees of $5,000.00 until Confirmation of Plan | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $1,717.00 | Paid in full on the effective date of the Plan |
| Other administrative Expenses | | Paid in full on the effective date of the Plan, or according to separate written agreement |
| Office of the U.S. Trustee Fees | | Paid in full on the effective date of the Plan |

B25B (Official Form 25B) (12/08) – Cont.

| : | : | : | : |
|---|---|---|---|
| : **TOTAL** | : **$6,717.00** | : | : |
| : | : | : | : |

### 2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507 (a)(8) of the Code. Unless a holder of such a §507 (a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated §507 (a)(8) priority tax claim and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service | $147,371.6 Priority - Class 1 Disputed | | Pmt. Interval: every 30 days Monthly Pmt.: $1,500.00 Begin date: 10 days after Confirmation<br><br>End date: 60 months<br><br>Interest Rate %: N/A<br><br><br>Total payout amount: **$90,000.00** |

10

B25B (Official Form 25B) (12/08) – Cont.

| | | | |
|---|---|---|---|
| **State of Ohio** **Dept. of Taxation** | **$199,762.0** **Priority -** **Class 1** **Disputed** | | Pmt. Interval: every 30 days Monthly Pmt.: $700.00 Begin date:  10 days after confirmation End date: 60 months Interest Rate %:  0% Total payout amount: **$42,000.00** |
| **State of Ohio** **Job & Family** **Services** | **$34,128.84** **Priority -** **Class 1** **Disputed** | | Pmt. Interval: every 30 days Monthly Pmt.: $ 100.00 Begin date:  10 days after confirmation End date: 60 months Interest Rate %:  0% Total payout amount: **$6,000.00** |
| **State of Ohio** **Bureau of Worker's Comp:** | **$1,069.70** **Priority -** **Class 1** **Disputed** | | Pmt. Interval: every 30 days Monthly Pmt.: $100.00 |

B25B (Official Form 25B) (12/08) – Cont.

| : | : | : | : Begin date:   10 days | : |
| : | : | : | : | : |
| : | : | : | :        after confirmation | : |
| : | : | : | : | : |
| : | : | : | : End date: | : |
| : | : | : | :      11 months | : |
| : | : | : | : | : |
| : | : | : | : Interest Rate %:   0% | : |
| : | : | : | : | : |
| : | : | : | : Total payout amount: | : |
| : | : | : | :        **$1,069.70** | : |
| : | : | : | : | : |

## C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under §506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

| : Class # : | **Description** | : | Insider? (Y/N) | : | Impairment | : | Treatment | : |
|---|---|---|---|---|---|---|---|---|
| : | | : | | : | | : | | : |
| :   **2**   : | **Bayview Loan** | : | | : | **$433,837.52** | : **$3,000/month** | |
| : | **Servicing, Inc.** | : | **No** | : | **Impaired** | :   **60 months** | : |
| : | | : | | : | <u>**Disputed**</u> | : **Total:$180,000.00** : |

12

B25B (Official Form 25B) (12/08) – Cont.

| : | 2 | : | Huntington | : | | : | $49,828.80 | : $100.00/month | : |
| : | | : | National Bank | : | No | : | Impaired | : 60 months | : |
| : | | : | | : | | : | Disputed | :Total:$6,000.00 | : |
| : | | : | | : | | : | | : | : |

### 2.   Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507 (a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.   The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.   However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507 (a)(1), (4), (5), (6), and (7) of the Code and their proposed treatment under the Plan:

| : | Class # | : | Description | : Impairment : | | Treatment | : |
| : | | : | | : | : | | : |
| : | | : | | : | : | | : |
| : | | : | | : | : | | : |

### 3.   Class of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to Priority under § 507 (a) of the Code.

The following chart identifies the Plan's proposed treatment of the Class which contain general unsecured claims against the Debtor:

13

B25B (Official Form 25B) (12/08) – Cont.

| : | Class # | : | Description | : Impairment : | Treatment | : |
|---|---------|---|-------------|----------------|-----------|---|
| : | 3 | : | **State of Ohio, BWC** <br> **$281,332.62** | : **Impaired** : <br> : **Disputed** : | **5% of filed claim** | : |
| : | 3 | : | **City of Columbus** <br> **Dept. of Taxation** <br> **$31,123.24** | : **Impaired** : <br> : **Disputed** : | **5% of filed claim** | : |
| : | 3 | : | **CAN Capital** <br> **Merchant Services** <br> **$30,267.68** | : **Impaired** : <br> : **Disputed** : | **5% of filed claim** | : |

### 4. Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| : | Class # | : | Description | : Impairment : | Treatment | : |
|---|---------|---|-------------|----------------|-----------|---|
| : | | : | **None** | : : | | : |

14

B25B (Official Form 25B) (12/08) – Cont.

## D. Means of Implementing the Plan

### 1. Source of Payments

Payments and distributions under the Plan will be funded by the following:

**From the day to day operating profits of the Debtor**

### 2. Post-confirmation Management

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider? | Position | Compensation |
|------|-------------|----------|----------|--------------|
| David Bobst | | No | President | YTD $13,640 |
| Sandra Bobst | | No | President | YTD $5,500 |

## E. Risk Factors

The Plan has the following risks:

The Debtor has the usual business risks such as loss of skilled personnel, decline in business both from the public and through State Farm's Direct Repair providers, and subject to possible economic downturn.

Each holder of a claim or interest is encouraged to read the contents of this Disclosure Statement before making a decision to accept or reject the Plan.   The terms used in this Disclosure Statement have the same meaning as defined in the Plan, unless the context otherwise requires.

15

B25B (Official Form 25B) (12/08) – Cont.

## F.  Executory Contracts and Unexpired Leases

The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.   Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.   Exhibit 5.1 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such default.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection of the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan.   Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the retention of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

## G.  Tax Consequences of Plan

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

The Plan and its tax consequences are complex.   The tax consequences of the Plan will depend on factual determinations with respect to each creditor.   No ruling has been or will be requested from the Internal Revenue Service prior to the Effective Date regarding the tax consequences of the Plan.

B25B (Official Form 25B) (12/08) – Cont.

BECAUSE THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND
MAY VARY BASED UPON INDIVIDUAL CIRCUMSTANCES, THIS DISCLOSURE
STATEMENT RENDERS NO ADVICE ON THE TAX CONSEQUENCES OF THE
IMPLEMENTATION OF THE PLAN TO ANY PARTICULAR CREDITOR, TO
DEBTOR, OR TO INTEREST HOLDERS.   EACH SUCH PARTY IS URGED TO
CONSULT WITH HIS OR HER TAX ADVISOR AS TO THE CONSEQUENCES OF THE
PLAN UNDER APPLICABLE FEDERAL, STATE AND LOCAL TAX LAWS.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of
The Code.   These include the requirements that:   the Plan must be proposed in good faith; at least
one impaired class of claims must accept the plan, without counting votes of insiders; the Plan
must distribute to each creditor and equity interest holder at least as much as the creditor or equity
interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest
holder votes to accept the Plan; and the Plan must be feasible.   These requirements are not the
only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that
the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.
A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or
equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting
purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 1, 2, and 3 are impaired and that

17

B25B (Official Form 25B) (12/08) – Cont.

holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.
The Plan Proponent believes that no classes are impaired and that holders of claims in each of
these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1.  What is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity
interest has the right to vote on the Plan.   Generally, a claim or equity interest is allowed if either

(1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has
been scheduled as disputed, contingent or unliquidated, or

(2) the creditor has filed a proof of claim or equity interest, unless an objection has been
filed to such proof of claim or equity interest.   When a claim or equity interest is not allowed, the
creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court,
after proper notice and hearing, either overrules the objection or allows the claim or equity interest
for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

> **The deadline for filing a proof of claim in this case was July 22, 2015 .**
> **The deadline for filing objections to claims is _____ .**

### 2.  What is an Impaired Claim or an Allowed Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only
if it is in a class that is *impaired* under the Plan.   As provided in § 1124 of the Code, a class is
considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of
that class.

### 3.   Who is **Not** Entitled to Vote

The holders of the following *five* types of claims and equity interest are not entitled to vote:
* holders of claims and equity interests that have been disallowed by an order of the
  Court;

18

B25B (Official Form 25B) (12/08) – Cont.

- holders of claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the code; and holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

B25B (Official Form 25B) (12/08) – Cont.

A class of equity interests accepts the Plan if the holders of at least (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Non-accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A Plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly", and is "fair and equitable" toward each class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

B25B (Official Form 25B) (12/08) – Cont.

### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this Disclosure Statement as Exhibit F.

### 2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided financial information. Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $64,800.00. The final Plan payment is expected to be paid on January 10, 2021.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.    EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

Discharge. On the Effective Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged

21

B25B (Official Form 25B) (12/08) – Cont.

of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007 (c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B). After the Effective Date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

## B. **MODIFICATION OF PLAN**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new Disclosure Statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modification after notice and a hearing.

## C. **Final Decree**

Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternately, the Court may enter such a final decree on its own motion.

## VI.    **REPRESENTATIONS**

NO RELIANCE SHOULD BE PLACED ON PRIOR CORRESPONDENCE OR DISCUSSIONS WITH DEBTOR OR ITS COUNSEL REGARDING THIS DISCLOSURE STATEMENT OR THE PLAN OF REORGANIZATION. CREDITORS OR INTEREST HOLDERS SHOULD RELY ONLY UPON THE INFORMATION CONTAINED HEREIN. EXCEPT AS SET FORTH IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS, NO REPRESENTATIONS

B25B (Official Form 25B) (12/08) – Cont.

CONCERNING DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE not AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.   ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ALTHOUGH DEBTOR BELIEVES ALL INFORMATION HEREIN IS ACCURATE, DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY DEBTOR'S MANAGEMENT BASED UPON DEBTOR'S RECORDS, CURRENT MARKET CONDITIONS, PAST EXPERIENCE AND GENERAL PROJECTIONS PERTAINING TO THE OPERATION OF THE BUSINESS.

**THE APPROVAL BY THE COURT OF DEBTOR'S DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF DEBTOR'S PLAN OR A GUARANTY OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

GARRY A. SABOL ("COUNSEL"), COUNSEL TO THE DEBTOR, IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT IS WITHOUT INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.   COUNSEL HAS NOT VERIFIED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, ALTHOUGH IT HAS NO ACTUAL KNOWLEDGE OF ANY INACCURACIES.

B25B (Official Form 25B) (12/08) – Cont.

DEBTOR URGES YOU TO READ CAREFULLY THE PLAN, THIS DISCLOSURE STATEMENT AND ITS EXHIBITS. THE PLAN, THIS DISCLOSURE STATEMENT AND ITS EXHIBITS ARE INTENDED TO PROVIDE YOU WITH AS MUCH INFORMATION AS REASONABLY POSSIBLE, GIVEN THE LIMITATIONS OF SPACE AND TIME, WITH WHICH TO DECIDE WHETHER TO ACCEPT OR REJECT THE PLAN DESCRIBED HEREIN.

## VII.  CONCLUSION

Debtor urges all impaired creditors to vote to ACCEPT the Plan and to evidence such acceptance by returning their ballot by _____ , 2016.

By: _____

Bobst Collision, Inc.
David Bobst, President

By: /s/ Garry A. Sabol_____
Garry A. Sabol (0002004)
Attorney for Debtor
1530 Demorest Drive
Columbus, OH 43228
(614) 871-8970
(614) 871-5297 Fax
sabolg@yahoo.com

24

B25B (Official Form 25B) (12/08) – Cont.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Disclosure Statement for Bobst Collision, Inc. was served upon the below listed parties by regular U.S. mail, postage pre-paid or by electronic filing through the ECF system this ___ day of December, 2016.

J. Shane Flannery, Esq.
Office of the U.S. Trustee
170 N. High Street, Suite 200
Columbus, OH 43215

Bethany Hamilton
Assistant U.S. Attorney
303 Marconi Blvd., Suite 200
Columbus, OH 43215

Brian Gianangeli
State of Ohio, Dept. of Taxation
6305 Emerald Parkway
Dublin, OH 43016

and on the following by **ordinary U.S. Mail** addressed to:

Bobst Collision, Inc.
2918 Parsons Avenue
Columbus, OH 43207-3053

City of Columbus
Income Tax Division
50 W. Gay Street, 4th floor
Columbus, OH 43215-9037

State of Ohio, Bureau of Workers Comp
c/o Ohio Attorney General
150 E. Gay Street
Columbus, OH 43215

The United States of America
c/o U.S. Attorney General
950 Pennsylvania Avenue NW
Washington, D.C.20530

Sandra E. Bobst
480 Grebus Road
Columbus, OH 43207

CAN Capital Management Services
2015 Vaughn Road N.W.
Suite 500
Kennesaw, GA 30144-7831

25

State of Ohio, Dept. of Jobs & Family
c/o Ohio Attorney General
150 E. Gay Street
Columbus, OH 43215

Huntington National Bank
c/o Lea Downward
2361 Morse Road
Columbus OH 43229

State of Ohio, Department of Taxation
P.O. Box 182402
Columbus, OH 43218

Bayview Loan Servicing LLC
4425 Ponce de Leon
5th floor
Coral Gables, FL 33146

State of Ohio, Dept. of Taxation
c/o Attorney General
150 E. Gay Street
Columbus, OH 43215

City of Columbus
Income Tax Division
77 N. Front Street, 2nd floor
Columbus, OH 43215

/s/ Garry A. Sabol (0002004)
Garry A. Sabol
Attorney for Debtor